**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ECOMMERCE MARKETERS ALLIANCE, INC. DBA ECOMMERCE INNOVATION ALLIANCE; FLUX FOOTWEAR, LLC; and STODGE, INC. DBA POSTSCRIPT,** | § § § § § § | |
| *Plaintiffs*, | § § | **CIVIL ACTION NO. 1:25-cv-1401-RP** |
| **vs.** | § § | |
| **STATE OF TEXAS; KEN PAXTON, in his official capacity as Attorney General of Texas; and JANE NELSON, in her official capacity as Texas Secretary of State,** | § § § § § § | |
| *Defendants.* | § | |

**<u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    A.    EIA's members engage in consent-based text message marketing ...................... 2

    B.    Texas imposes registration and disclosure requirements on persons who engage in telephone solicitation via Chapter 302 ......................................... 3

    C.    SB 140 amends Chapter 302, imposing Chapter 302's requirements on persons who send marketing text messages ........................................ 7

LEGAL STANDARD ........................................................................................... 9

ARGUMENT ..................................................................................................... 10

I.    Plaintiffs are likely to prevail on the merits of their constitutional claim ...................... 10

    A.    Chapter 302, as amended by SB 140, is an unconstitutional restriction on commercial speech .......................................................... 10

    B.    SB 140 is unconstitutionally vague ........................................................ 14

        1.    Chapter 302, as amended by SB 140, is unconstitutionally vague because it is impossible for a business to know who is "a purchaser located in the state." ....................................... 15

        2.    Chapter 302, as amended by SB 140, is unconstitutionally vague because its undefined exceptions make its scope unclear ........................................................................ 16

II.    The remaining factors favor a preliminary injunction ................................... 18

CONCLUSION ................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. ACLU,*
    542 U.S. 656 (2004) ..................................................................................................11

*Book People, Inc. v. Wong,*
    91 F.4th 318 (5th Cir. 2024) ...............................................................................18, 19

*Byrum v. Landreth,*
    566 F.3d 442 (5th Cir. 2009) .................................................................10, 11, 12, 14

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
    447 U.S. 557 (1980) ..................................................................................................10

*Christian Legal Soc'y v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ...................................................................................19

*Computer & Commc'ns Indus. Assoc. v. Paxton,*
    747 F. Supp. 3d 1011 (W.D. Tex. 2024) .................................................................19

*Edenfield v. Fane,*
    507 U.S. 761 (1993) ............................................................................................10, 11

*Elrod v. Burns,*
    427 U.S. 347 (1976) ..................................................................................................18

*FCC v. Fox Television Stations, Inc.,*
    567 U.S. 239 (2012) ............................................................................................14, 15

*Fla. Bar v. Went For It, Inc.,*
    515 U.S. 618 (1995) ............................................................................................11, 14

*Free Speech Coal., Inc. v. Paxton,*
    95 F.4th 263 (5th Cir. 2024) ...............................................................................10, 14

*Moore v. Brown,*
    868 F.3d 398 (5th Cir. 2017) .....................................................................................9

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ...................................................................................18

*RigUp, Inc. v. Sierra Hamilton, LLC,*
    613 S.W.3d 177 (Tex. App.—Austin 2020) ...........................................................17

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995)...................................................................................................11

*Spain v. ManPow, LLC*,
No. 02-24-00154-CV, 2025 Tex. App. LEXIS 3033
(Tex. App.—Fort Worth May 1, 2025)........................................................................17

S*print Corp. v. FCC*,
_ F.4th _, 2025 U.S. App. LEXIS 20862 (D.C. Cir. Aug. 15, 2025)........................15

*Students Engaged in Advancing Texas v. Paxton*,
765 F. Supp. 3d 575 (W.D. Tex. 2025)........................................................................19

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
732 F.3d 535 (5th Cir. 2013) ......................................................................................19

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002)......................................................................................................12

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976)......................................................................................................13

**Statutes**

47 U.S.C. § 227 ..............................................................................................................3, 4

Or. Rev. Stat. § 646.563(2) ...............................................................................................15

Tex. Bus. & Com. Code § 17.50 .........................................................................................5

Tex. Bus. & Com. Code § 302.001 ......................................................................4, 7, 8, 9, 16

Tex. Bus. & Com. Code § 302.004 ......................................................................................5

Tex. Bus. & Com. Code § 302.052 ......................................................................................5

Tex. Bus. & Com. Code § 302.058 ..................................................................................5, 17

Tex. Bus. & Com. Code § 302.059 ................................................................................5, 6, 18

Tex. Bus. & Com. Code § 302.061 ......................................................................................5

Tex. Bus. & Com. Code § 302.101 ..................................................................................4, 15

Tex. Bus. & Com. Code § 302.102 ....................................................................................4, 5

Tex. Bus. & Com. Code § 302.103 ......................................................................................4

Tex. Bus. & Com. Code § 302.105 ....................................................................................12

iii

Tex. Bus. & Com. Code § 302.106......................................................................................5

Tex. Bus. & Com. Code § 302.107......................................................................................5

Tex. Bus. & Com. Code § 302.151......................................................................................4

Tex. Bus. & Com. Code § 302.202......................................................................................5

Tex. Bus. & Com. Code § 302.203......................................................................................5

Tex. Bus. & Com. Code § 302.251......................................................................................5

Tex. Bus. & Com. Code § 302.301......................................................................................5

Tex. Bus. & Com. Code § 302.302......................................................................................5

Tex. Bus. & Com. Code § 302.303......................................................................................5

Tex. Bus. & Com. Code § 304.002...............................................................................6, 7, 8

Tex. Bus. & Com. Code § 304.051......................................................................................6

Tex. Bus. & Com. Code § 305.001......................................................................................6

Tex. Penal Code § 12.21......................................................................................................5

**Other Authorities**

Comm. on Trade, Workforce, & Econ. Dev., May 7, 2025 Hearing at 1:00:37-
    1:03:30, https://house.texas.gov/videos/22022 ........................................................8

CTIA, *Messaging Principles & Best Practices* § 5.1,
    https://tinyurl.com/3ddmbsdk (May 2023) ..............................................................3

*Customer*, Dictionary.com, https://www.dictionary.com/browse/customer
    (last visited Sep. 4, 2025)........................................................................................17

*Customer*, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/customer (last visited Sep. 4, 2025) .................................17

H.B. 3865, 83rd Gen. Assemb., Reg. Sess. (Or. 2025)....................................................15

S.B. 140, 89th Leg., Reg. Sess. (Tex. 2024)......................................................................7

S.B. 140, 89th Leg., Reg. Sess. (Tex. 2025)......................................................................8

Senate Comm. on Bus. & Com., February 18, 2025 Hearing (Part II),
    https://senate.texas.gov/videoplayer.php?vid=21145&lang=en ..............................7

Senate Session, March 11, 2025 Hearing,
    https://senate.texas.gov/videoplayer.php?vid=21272&lang=en ................................................7

Tex. Sec'y of State, *Telephone Solicitation Registration Statement*,
    https://www.sos.state.tx.us/statdoc/forms/3401.pdf ..................................................................4

## INTRODUCTION

Texas Senate Bill 140 ("SB 140") made sweeping changes to Chapter 302 of the Texas Business & Commerce Code, which regulates telephone solicitations. Before September 1, 2025, Chapter 302's burdensome registration and disclosure requirements were imposed only on persons engaging in telephone solicitation via phone *calls*. As amended by SB 140, however, Chapter 302's reach extends to text messages as well. SB 140's stated goal was laudable—it sought to curb unwanted and spam text messages. But because SB 140 is vaguely drafted, Chapter 302's requirements now *also* apply to businesses who send marketing test messages *only* to consumers who have previously provided their consent to receive such messages. The result is that a business which engages only in text message marketing campaigns to which consumers opt-in must nevertheless comply with the same registration and disclosure requirements as persons sending unwanted text messages—and bear the financial burden that comes along with doing so.

The First Amendment prohibits this regime as applied to Plaintiffs. The individual business plaintiffs, Plaintiff Flux Footwear, LLC ("Flux") and Stodge, Inc. ("Postscript"), and all the members of Plaintiff Ecommerce Innovation Alliance ("EIA") are businesses who send text messages *only* to consumers who have provided their consent. As applied to Plaintiffs, SB 140's burdensome registration and disclosure requirements are an unreasonable restriction on protected commercial speech because they do nothing to address Texas's purported interest in passing SB 140, which is to curb unwanted text solicitation.

And while Chapter 302 incorporates some exemptions to its broad scope that *might* exempt Plaintiffs, the exemptions are vague and undefined. Plaintiffs are left without any clarity regarding whether their actions are in fact subject to Chapter 302's requirements. This lack of notice

regarding the statute's scope renders it void for vagueness under the Due Process Clause, and the statute is unconstitutional as applied to Plaintiffs for that reason as well.

Plaintiffs support Texas's efforts to curb spam text messages. But SB 140 does not accomplish that goal as applied to Plaintiffs. Instead, it is an unconstitutional restriction on their commercial speech. Because Plaintiffs will suffer an irreparable loss of their First Amendment rights if the law is enforced against them, Plaintiffs respectfully request that the Court preliminarily enjoin the Texas Attorney General and Texas Secretary of state from enforcing this unconstitutional law against Plaintiffs and EIA's members.

## BACKGROUND

### A.    EIA's members engage in consent-based text message marketing.

EIA is a nonprofit corporation that was formed in 2023. Declaration of David Carter ("Carter Decl.") ¶ 4 (attached as Exhibit A). Its members are ecommerce businesses and technology vendors that directly support such businesses. *Id.* EIA's purpose is to promote the common interests of the ecommerce industry, and it does so by helping ecommerce companies navigate telemarketing laws at the federal and state levels. *Id.* ¶ 5. EIA also advocates for laws, regulations, and standards that reconcile the public interest with technological advances in ecommerce marketing and advocates for best practices for mobile marketing. *Id.*

EIA's members operate consent-based text messaging programs. *Id.* ¶ 4. These programs operate by inviting a consumer who visits an online store to type in their phone number and request marketing text messages. *Id.* Usually, by signing up to request these marketing messages, customers in turn receive discounts or other incentives. *Id.* For example, one of EIA's members, Plaintiff Flux, an ecommerce business based in Texas that sells athletic shoes, provides customers who visit its website with the opportunity to provide their phone number and receive 20% off their

2

first purchase when they sign up to receive text messages.  Declaration of Isaac Mertens ("Mertens Decl.") ¶¶ 3, 5 (attached as Exhibit B).

EIA also has members like Plaintiff Postscript, which operates a text message marketing platform.  Declaration of Alex Beller ("Beller Decl.") ¶¶ 3, 5 (attached as Exhibit C).  Postscript helps ecommerce businesses send text messages to consumers who have visited ecommerce websites and requested to receive messages.  *Id.* ¶ 3.  To utilize Postscript's services, merchants must agree to obtain consent from their end users and comply with CTIA—a national association of wireless carriers—policies.  *Id.* ¶¶ 6-7.  Pursuant to CTIA's principles and best practices, business sending consumer text messages must: obtain a consumer's consent to receive messages, obtain a consumer's express written consent to receive marketing messages; and ensure consumers have the ability to revoke consent.  CTIA, *Messaging Principles & Best Practices* § 5.1, https://tinyurl.com/3ddmbsdk (May 2023).  Postscript also sends messages to its own clients who have elected to receive information about Postscript's products and services.  Beller Decl. ¶ 23.

**B.    Texas imposes registration and disclosure requirements on persons who engage in telephone solicitation via Chapter 302.**

In 1991, Congress adopted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, which is implemented under regulations of the Federal Communications Commission.  Among other things, the TCPA prohibits unsolicited calls made using automatic telephone dialing systems or unsolicited advertisements sent via a "telephone facsimile machine, computer, or other device."  47 U.S.C. § 227(b)(1).  The TCPA may be enforced via a private right of action, and plaintiffs can receive $500 in statutory damages for violations.  *Id.* § 227(b)(3).

A number of states have enacted similar laws, sometimes referred to as "mini-TCPA" laws. Texas is one such state, and its mini-TCPA law is codified in Chapters 302, 304, and 305 of the Texas Business and Commerce Code.  Chapter 302, as it existed prior to being amended by SB

140, required persons making non-exempt "telephone solicitations" from Texas locations or to purchasers located in Texas to register with the Texas Secretary of State, obtain a registration certificate, and make detailed reports and disclosures. Tex. Bus. & Com. Code §§ 302.101-103, 302.151. Prior to September 1, 2025, Chapter 302 defined "telephone solicitation" as "a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item. The term includes a telephone call a purchaser makes in response to a solicitation sent by mail or made by any other means." *Id.* § 302.001(7). A "seller" is defined by the statute as "a person who makes a telephone solicitation on the person's own behalf" and a "salesperson" is defined as "a person who is employed or authorized by a seller to make a telephone solicitation." *Id.* § 302.001(4)-(5).

To register to make telephone solicitations under Chapter 302, a seller must file a form with the Texas Secretary of State. *Id.* § 302.102. This form requires the disclosure of numerous details about the seller, including: the name, address, date of birth of each officer; bylaws or governing documents for the company; street addresses for the company; each telephone number being used for telemarketing; the name and principal residence address of each salesperson; the criminal, civil litigation, and bankruptcy history of every officer or director, as well as any person in charge of any location of the business; wage information for each salesperson; information regarding the business's financial institutions; a description of each and every item being sold; sales literature for each and every product; and, if the seller does not manufacture the product, information regarding the manufacturer. *See* Tex. Sec'y of State, *Telephone Solicitation Registration Statement*, https://www.sos.state.tx.us/statdoc/forms/3401.pdf (last visited Sep. 4, 2025). All information included in the registration form is public information. Tex. Bus. & Com.

Code § 302.102(b). Sellers must also pay a $200 registration filing fee and obtain a bond, letter of credit, or certificate of deposit in the amount of $10,000. *Id.* §§ 302.106-107.

In addition to requiring registration, Chapter 302 also imposes disclosure requirements each time a telephone solicitation is made. *Id.* § 302.202. Sellers must always disclose "the complete street address of the location from which the salesperson is calling the purchaser and, if different, the complete street address of the seller's principal location." *Id.* Additional disclosures are required depending on the content of the telephone solicitation. *Id.* A seller may not, at the time it makes such disclosures, reference that it is doing so to comply with Chapter 302. *Id.* § 302.203.

Violations of Chapter 302 are subject to five potential penalties. First, the Attorney General may bring an action to enjoin a person from violating the chapter. *Id.* § 302.301(a). Second, "[a] person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation." *Id.* § 302.302(a). Third, a violation is treated as a deceptive trade practice subject to enforcement under Chapter E of the Texas Deceptive Trade Practices Act, *id.* § 302.303, which provides for a private right of action and the recovery of attorneys' fees, *id.* § 17.50. Fourth, an injured person may bring an action to recover against the security that sellers are required to obtain as part of the registration process. *Id.* § 302.004. Finally, a person who knowingly violates certain parts of Chapter 302 may be found guilty of a Class A misdemeanor, *id.* § 302.251, which is punishable by a fine of up to $4,000 and a year in jail, Tex. Penal Code § 12.21.

Chapter 302 incorporates ten exemptions. Tex. Bus. & Com. Code §§ 302.052-061. Two are potentially relevant here. First, § 302.058, provides that a seller who is "soliciting business from a former or current customer" and which "has operated under the same business name for at least two years" is exempt from Chapter 302. Second, § 302.059 provides an exemption for

"Persons Who Make Certain Sales Presentations or Make Sales at Established Retail Locations," and specifically exempts:

> [A] person who for at least two years, under the same name as that used in connection with the person's telemarketing operations, has operated a retail establishment where consumer goods are displayed and offered for sale continuously, if a majority of the person's business involves buyers obtaining services or products at the retail establishment.

*Id.* § 302.059(2).

Chapters 304 and 305 contain additional requirements for telephone solicitation. Chapter 304 establishes a "No-Call List" and prohibits telemarketers from making telemarketing calls or other unsolicited telephone calls to numbers on the list. *Id.* § 304.051. Chapter 305 prohibits making a "telephone call" for the purpose of "making a sale" to a telephone number that the caller knew or should have known "is a mobile telephone for which the called person will be charged for that specific call" where "the called person has not consented to the making of such a call to the person calling or using the device or to the business enterprise for which the person is calling or using the device." *Id.* § 305.001.

Prior to September 1, 2025, only Chapter 304 reached text messages. Chapter 304 defined "telephone call" to include text messages by defining the term as:

> [A] call or other transmission, including a transmission of a text or graphic message or of an image, to a mobile telephone number serviced by a provider of commercial mobile service … except that the term does not include a transmission made to a mobile telephone number as part of an ad-based telephone service, in connection with which the telephone service customer has agreed with the service provider to receive the transmission.

*Id.* § 304.002(10)(C). Accordingly, while Chapter 304's requirements applied to some text messages, its definition expressly exempted text messages sent with the customer's prior consent from qualifying as a "telephone call" triggering the statute's coverage.

### C.    SB 140 amends Chapter 302, imposing Chapter 302's requirements on persons who send marketing text messages.

During the 2025 legislative section, the Texas legislature made changes to Texas's mini-TCPA law through the enactment of SB 140.  SB 140 was originally filed by Senator Bob Hall.  Carter Decl., Ex. 2, S.B. 140, 89th Leg., Reg. Sess. (Tex. 2024).  In the bill's statement of intent, Senator Hall indicated that the bill's purpose was to align Chapter 302 with Chapter 304 to include "text messaging" within the definition of "telephone call" as that term is used in Chapter 302.  Carter Decl. Ex. 3, S.B. 140, 89th Leg., Reg. Sess. (Tex. 2024) (Author's/Sponsor's Statement of Intent).  And the first draft of SB 140 did just that—it proposed adding a subdivision to § 302.001 of Chapter 302 providing that "'telephone call' has the meaning assigned by Section 304.002."  Carter Decl. Ex. 2, S.B. 140, 89th Leg., Reg. Sess. (Tex. 2024).  Accordingly, as originally drafted, Chapter 302 as amended by SB 140 would have incorporated Chapter 304's exemption for text messages sent with the consumer's prior consent.

This original draft would have served SB 140's intent—to curb *unwanted* text messages.  Statements by Senator Hall and other legislators confirm that this was the impetus for SB 140.  When discussing SB 140 at a hearing of the Senate Committee on Business and Commerce on February 18, 2025, Senator Hall noted that the intent of the bill was to address "unauthorized text messaging."  Senate Comm. on Bus. & Com., February 18, 2025 Hearing (Part II) at 48:38-49:21, https://senate.texas.gov/videoplayer.php?vid=21145&lang=en.  At a subsequent hearing on March 11, 2025, Senator Hall again explained that the amendment to Chapter 302 was necessary because "consumers are not adequately protected against unauthorized calls or unauthorized text messages under Chapter 302" and explained to his colleagues that if they voted for the bill, "your constituents will be protected from unwanted calls and texts."  Senate Session, March 11, 2025 Hearing at 26:46-27:50, https://senate.texas.gov/videoplayer.php?vid=21272&lang=en.  Similarly, during a

hearing before the House Trade, Workforce, and Economic Development Committee, Representative Rafael Anchia explained that SB 140 was intended to curb "unwanted text messaging" and "unwanted text messaging peddlers," and told the story of a Texas consumer who had received "thousands of unsolicited text messages a day," but could not seek redress under Chapter 302 because the definition of telephone calls in that statute did not include text messages. Comm. on Trade, Workforce, & Econ. Dev., May 7, 2025 Hearing at 1:00:37-1:03:30, https://house.texas.gov/videos/22022.

On May 14, 2025, however, a subsequent version of SB 140 was introduced that significantly broadened its scope. Carter Decl., Ex. 1. As relevant here, the new version of SB 140 both added a subsection to § 302.001 providing that "'telephone call' has the meaning assigned by Section 304.002" *and* altered the meaning of "telephone solicitation" under § 302.001. Carter Decl., Ex. 6, S.B. 140, 89th Leg., Reg. Sess. (Tex. 2025). This version of SB 140 proposed amending the definition of "telephone solicitation" to mean "a call or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. The term includes a telephone call a purchaser makes in response to a solicitation sent by mail or made by other means." *Id.*

| SENATOR HALL'S VERSION | SUBSTITUTE VERSION |
|---|---|
| SECTION 1.   Section 302.001, Business & Commerce Code, is amended by adding Subdivision (6-a) to read as follows:<br>(6-a)   "Telephone call" has the meaning assigned by Section 304.002.<br><br>SECTION 2.   This Act takes effect September 1, 2025 | SECTION 1.   Section 302.001, Business & Commerce Code, is amended by adding Subdivision (6-a) and amending Subdivision (7) to read as follows:<br>(6-a)   "Telephone call" has the meaning assigned by Section 304.002.<br><br>(7) "Telephone solicitation" means a [telephone] call or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson [initiates] to induce a person to purchase, rent claim, or receive an item.  The term includes a |

| | telephone call a purchaser makes in response to a solicitation sent by mail or made by any other means. |
|---|---|

Crucially, the amended version of SB 140 removed the word "telephone" from the phrase "telephone call" in § 302.001's definition of "telephone solicitation."  Accordingly, while the revised version of SB 140 still purported to incorporate Chapter 304's definition of "telephone call," it removed that phrase from the definition of "telephone solicitation," thereby severing the link between Chapter 304's definition of telephone call and the telephone solicitation regulated by Chapter 302.  In other words, because the new version of SB 140 removed the critical use of "telephone call" from the statute, SB 140's incorporation of Chapter 304's definition, including its exemption for consent-based text messaging programs, was rendered essentially meaningless.  Without meaningful incorporation of Chapter 304's exemption for text messages for which a consumer has agreed to receive, the revised SB 140's scope was far broader than the original version.

The revised version of the bill was passed by the Texas Senate on May 31, 2025, passed by the Texas House on June 1, 2025, and signed into law on June 20, 2025.  Carter Decl., Ex. 1. It went into effect on September 1, 2025.  *Id.*

## LEGAL STANDARD

To obtain a preliminary injunction, a litigant must demonstrate four elements: "a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest."  *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

9

**ARGUMENT**

I.    **Plaintiffs are likely to prevail on the merits of their constitutional claim.**

A.    **Chapter 302, as amended by SB 140, is an unconstitutional restriction on commercial speech.**

"The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). "The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993). Accordingly, "even a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment." *Id.*

When the government seeks to regulate commercial speech, such regulations "must comply with the *Central Hudson* test." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). "Under *Central Hudson*, courts apply 'a four-part analysis.'" *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 283 (5th Cir. 2024). "First, the court 'must determine whether the expression concerns lawful activity and is not misleading. Second, the court asks 'whether the asserted governmental interest is substantial. If both inquiries yield positive answers, [courts] must determine whether the regulation advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.'" *Id.* (quoting *Central Hudson*, 447 U.S. at 566).

Plaintiffs easily pass the first step of the *Central Hudson* test—their speech is not false or misleading and concerns lawful commercial activity. Plaintiffs seek only to deliver messages to consumers, who have all requested to receive marketing text messages in exchange for financial incentives, regarding their products. Accordingly, Chapter 302, as amended by SB 140, can survive only if the State can establish that it has a substantial government interest that SB 140

10

directly advances and that SB 140 is not broader than necessary to achieve such interest. *See Byrum*, 566 F.3d at 446 ("Although the plaintiffs bear the burden on the preliminary injunction factors, '[i]t is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it.' Thus, when considering the likelihood of success, the district court should … inquire[] whether there is a sufficient likelihood the State will ultimately fail to prove its regulation constitutional." (first quoting *Edenfield*, 507 U.S. at 770, and then quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004))).

It cannot. While Plaintiffs do not dispute that the stated purpose of SB 140—protecting against unwanted and unsolicited text messages—is a substantial government interest, SB 140, as it applies to Plaintiffs, does nothing to advance that interest and instead impermissibly burdens Plaintiffs' protected speech.

To satisfy *Central Hudson*'s third element, Texas must establish that "the challenged regulation 'advances the Government's interest in a direct and material way.'" *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)). "That burden … 'is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Id.* at 626. And even where an asserted interest is "substantial in the abstract," *Central Hudson*'s third element is not satisfied unless the regulation, "as applied to [Plaintiff's] proposed speech" "directly advance[s] the state interest involved." *Edenfield*, 507 U.S. at 767, 770. Here, subjecting Plaintiffs to Chapter 302's registration and disclosure requirements does nothing to curb unwanted text messages, because Plaintiffs are only sending marketing text messages to consumers who have asked to receive such messages, often to obtain a discount or incentive.

Most importantly, Texas cannot satisfy *Central Hudson*'s fourth element as applied to Plaintiffs, which requires courts to assess whether the challenged regulation of commercial speech is "no more extensive than necessary to further the State's interest." *Byrum*, 566 F.3d at 448. To satisfy this element, Texas must establish that there is a "fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Id.* In applying this element of *Central Hudson*'s test, the Supreme Court has "made clear that if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002).

The version of SB 140 that became law purports to address the problem of unsolicited and spam messages by applying burdensome registration and disclosure requirements to all persons sending marketing text messages, whether a consumer has provided her consent or not. But lumping together businesses like Plaintiffs with spam texters and subjecting them to Chapter 302's requirements is not a reasonable way to address Texas's interest. As detailed above, the burdens imposed by forced compliance with Chapter 302's registration and disclosure requirements are significant. In addition to incurring significant financial expense, Plaintiffs will be forced to collect and make public numerous details regarding their business, including proprietary wage information and manufacturer information. Beller Decl. ¶¶ 18-23; Mertens Decl. ¶¶ 20-21. And businesses subject to Chapter 302 are also required to file quarterly addendum "providing the required registration information for each salesperson who is soliciting or has solicited on behalf of the seller during the preceding quarter" and must submit any "material change in information submitted in a registration statement" to the Secretary. Tex. Bus. & Com. Code. § 302.105(a).

12

The cost of compliance with this registration requirement is significant.  Beller Decl. ¶¶ 20-21; Mertens Decl. ¶¶ 18-19.

In addition to Chapter 302's burdensome registration requirements, Chapter 302's disclosure requirements are similarly unnecessarily burdensome for businesses like Plaintiffs. Plaintiffs will be forced to provide the street address of the location from which the salesperson is contacting the consumer—which could be their home address, for salespeople who work from home—every time they contact a consumer.  And for some businesses, additional disclosures are required.  Because of character limitations in text messaging, Plaintiffs will likely be required to send multiple messages every time they contact a consumer in order to comply with disclosure requirements.  Beller Decl. ¶ 22.  Because businesses pay by the message for text message marketing, these disclosure requirements could double or triple Plaintiffs' costs to market via text to Texas consumers.  *Id.*  And these disclosure requirements turn a single-text marketing message that a consumer has opted to receive into a series of texts containing information in which the consumer likely has no interest, which is the opposite of curbing unwanted test messages.

Ultimately, far from being no broader than necessary to curb *un*wanted text messages, SB 140 is so broad that it will necessarily curb *wanted* text messages.  Rather than comply with costly and burdensome registration and disclosure requirements or risk the penalties imposed by Chapter 302, Plaintiffs and many of EIA's members may choose to discontinue their text message marketing to Texas consumers.  But because consumers receiving texts from Plaintiffs and EIA's members have affirmatively indicated they would like to hear from such businesses, so SB 140 burdens not only Plaintiffs' and EIA's members' right to speak to these consumers, but also the consumers' right to receive information they have asked to hear.  *Cf. Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("[W]here a speaker exists … the

13

protection afforded is to the communication, to its source and to its recipients both.").  SB 140 chills protected speech that consumers have asked to hear.

There is no reason to force Plaintiffs to incur these significant burdens, as well as potentially depriving Plaintiffs' customers of speech they have requested to receive, to achieve the State's purported goal of reducing unwanted text messages, because there are "numerous and obvious less-burdensome alternatives."  *Free Speech Coal.*, 95 F.4th at 284 (quoting *Went For It*, 515 U.S. at 633).  Here, the Court need look no further than SB 140's prior drafts to easily conclude that a less restrictive alternative exists; namely, making clear that Chapter 302's burdensome requirements do not extend to businesses who obtain a consumer's consent before sending text messages.  Texas could also explore other alternatives to curbing unwanted text messages that do not involve imposing widespread registration and disclosure requirements that the culprits of spam text messaging are unlikely to follow in the first instance.  Any of these options would have a scope that was more "in proportion to the interest served" than the version of SB 140 that passed. *See Byrum*, 566 F.3d at 448.

Plaintiffs are therefore substantially likely to succeed in showing that Chapter 302, as amended by SB 140, is an unlawful restriction on commercial speech as applied to them.

**B.    SB 140 is unconstitutionally vague.**

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  A law is impermissibly vague where it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Id.*  The void for vagueness doctrine addresses two connected but discrete concerns: "first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those

14

enforcing the law do not act in an arbitrary or discriminatory way." *Id.* And where "speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253-54.

> **1.    Chapter 302, as amended by SB 140, is unconstitutionally vague because it is impossible for a business to know who is "a purchaser located in the state."**

Chapter 302 provides that it applies to any telephone solicitations "to a purchaser located in this state." Tex. Bus. & Com. Code § 302.101(a). But SB 140 does not provide businesses with notice as to whether a particular consumer is a "purchaser located in this state" such that she falls within the statute's scope, because businesses have no reliable method of determining whether a purchaser will be located in Texas when a text message is delivered and SB 140 does not provide businesses with any proxy to use to judge whether sending a particular message implicates Chapter 302.

While cell phones track a user's location, businesses cannot access that real-time location data; to the contrary, the FCC has fined wireless carriers hundreds of millions of dollars for sharing that location data with third parties. *Cf.* S*print Corp. v. FCC*, _ F.4th _, 2025 U.S. App. LEXIS 20862 (D.C. Cir. Aug. 15, 2025) (upholding the FCC's fines of Sprint and T-Mobile for failing to protect the confidentiality of customer location information). Businesses have no practical way to know before sending a message whether the consumer on the other end will happen to be traveling through Texas when she receives the text message and therefore have no notice of which of their messages fall within Chapter 302's bounds. Beller Decl. ¶ 17; Mertens Decl. ¶ 16.

Some states have addressed this flaw in their mini-TCPA laws by providing that a business can safely rely on area codes to determine whether their conduct implicates the law. *See* H.B. 3865, 83rd Gen. Assemb., Reg. Sess. (Or. 2025) (amending Or. Rev. Stat. § 646.563(2) to provide that "[f]or the purpose of complying with the requirements of this section, a person may rely on

the area code of a telephone number for a mobile telephone to determine whether the telephone number is for a party located in this state").  But with no similar provision codified in Texas's statutes, business *cannot* safely assume that a consumer with a Texas area code is actually located in Texas—such an assumption is overinclusive of consumers who have moved away from Texas but did not change their cell phone numbers and underinclusive of consumers without Texas area codes who have moved to or are traveling through the state.

Because Plaintiffs have no practical way of knowing whether any given message will be received by a consumer located in Texas, and because Chapter 302 does not provide businesses with any framework to use as a stand in for the impossibility of knowing whether a consumer is *actually* located in Texas, Plaintiffs do not have the fair notice of the statute's scope that they need to act accordingly.  Plaintiffs are therefore substantially likely to succeed in showing that Chapter 302, as amended by SB 140, is therefore unconstitutionally vague as applied to them.

> **2.      Chapter 302, as amended by SB 140, is unconstitutionally vague because its undefined exceptions make its scope unclear.**

Chapter 302, as amended by SB 140, is also unconstitutionally vague because while Chapter 302 has two exceptions that potentially limit its scope as to Plaintiffs, the undefined nature of the exceptions fails to put Plaintiffs on notice as to whether they nevertheless fall within the statute's bounds.

***Section 302.058.***  Section 302.058 exempts from Chapter 302's requirements a person who is soliciting business "from a former or current customer," so long as such person has operated under the same business name for at least two years.  But "customer" is undefined by the statute— the statute defines only "purchaser," which means a person who "is solicited to become or becomes obligated for the purchase or rental of an item" or "is offered an opportunity to claim or receive an item."  Tex. Bus. & Com. Code § 302.001(3).  This failure to define "customer" renders Chapter

16

302's scope unconstitutionally vague, because the word customer is subject to multiple meanings and, critically, for Plaintiffs, could mean either a person who is a prospective purchaser of a product or a person who has already completed a purchase.

In normal usage, "customer" commonly refers to individuals who are prospective buyers, such as a person who comes to a store to browse, even if they have not yet completed a purchase. For example, a manager might ask a salesclerk to check on the "customer" who just came in the door. *Cf. Customer*, Dictionary.com, https://www.dictionary.com/browse/customer (last visited Sep. 4, 2025) (including various definitions of customer, including "Informal., a person one has to deal with"); *Customer*, Merriam-Webster, https://www.merriam-webster.com/dictionary/customer (last visited Sep. 4, 2025) (providing both "patron" and "guest" as synonyms for customer). This usage, if applied in the context of online sales, would certainly mean that individuals who have taken the additional step of affirmatively consenting to receive text messages on the merchant's website fit within the "customer" exception. But some courts have interpreted customer to mean a person who has *already* made a purchase. *See, e.g.*, *RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 188 (Tex. App.—Austin 2020) (reviewing dictionary definitions but holding that "customer" means "one that purchases a commodity or service"); *Spain v. ManPow, LLC*, No. 02-24-00154-CV, 2025 Tex. App. LEXIS 3033, at *23 (Tex. App.—Fort Worth May 1, 2025) ("Merriam-Webster defines 'customer' as 'one that purchases a commodity or service'"). Accordingly, because "customer" is subject to multiple meanings, a person of common intelligence would have to guess what conduct falls within the scope of Chapter 302, as limited by § 302.058, and Plaintiffs are not on notice of whether their conduct falls within the statute's bounds. Beller Decl. ¶ 15; Mertens Decl. ¶ 14.

**Section 302.059.** Section 302.059 exempts from Chapter 302's requirements a person who:

for at least two years, under the same name as that used in connection with the person's telemarketing operations, has operated a retail establishment where consumer goods are displayed and offered for sale continuously, if a majority of the person's business involves buyers obtaining services or products at the retail establishment.

But, as with the "customer" exception, the critical word in § 302.059—"retail establishment"—is undefined.  As relevant to Plaintiffs, the section is unclear whether a person who sells goods entirely online operates a "retail establishment" or whether the exemption applies only to businesses with a brick-and-mortar location.  Because a person of common intelligence could reasonably interpret retail establishment to require a physical store or could interpret it to include online retail stores, Chapter 302's scope as limited by § 302.059 is undefined and Plaintiffs are not on notice of whether their conduct implicates Chapter 302.  Beller Decl. ¶ 16; Mertens Decl. ¶ 15.

## II.    The remaining factors favor a preliminary injunction.

The remaining factors all weigh in favor of granting Plaintiffs a preliminary injunction. Plaintiffs are likely to suffer irreparable harm absent an injunction—"[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary," and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Book People, Inc. v. Wong*, 91 F.4th 318, 340-41 (5th Cir. 2024) (first quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012); and then quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Here, Plaintiffs will be forced to comply with burdensome registration and disclosure requirements to engage in protected commercial speech, and Plaintiffs and many of EIA's members may choose to forgo their commercial speech entirely rather than navigate Chapter 302's burdensome regime or face penalties should they fail to do so.  This chilling effect undoubtedly deprives Plaintiffs of

their First Amendment rights and constitutes irreparable harm, warranting a preliminary injunction.

Texas will not be harmed by a preliminary injunction preventing the enforcement of Chapter 302, as amended by SB 140, against the Plaintiffs, because "the State and the public won't be injured by an injunction of a statute that likely violates the First Amendment." *Id.* at 341. And "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)); *see also Students Engaged in Advancing Texas v. Paxton*, 765 F. Supp. 3d 575, 604 (W.D. Tex. 2025) ("Because the Court has found that Plaintiffs have shown a substantial likelihood of success on the merits of their First Amendment claims, the Court finds that an injunction is in the public interest."); *Computer & Commc'ns Indus. Assoc. v. Paxton*, 747 F. Supp. 3d 1011, 1044 (W.D. Tex. 2024) (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enjoin the Attorney General and Secretary of State from enforcing SB 140 against Plaintiffs and EIA's members.

DATED: September 5, 2025                    Respectfully submitted,

                                            MCGUIREWOODS LLP

                                            By: */s/ Thomas M. Farrell*
                                            Thomas M. Farrell
                                            Texas Bar No. 06839250
                                            tfarrell@mcguirewoods.com
                                            845 Texas Ave., Suite 2400
                                            Houston, TX 77002
                                            (713) 353-6677 / (832) 214-9933 (Fax)

                                            Matthew A. Fitzgerald
                                            mfitzgerald@mcguirewoods.com
                                            Gateway Plaza
                                            800 East Canal Street
                                            Richmond, VA  23219-3916
                                            (804) 775-4716 / (804) 698-2251 (Fax)
                                            *Admitted pro hac vice*

                                            Hannah K. Caison
                                            hcaison@mcguirewoods.com
                                            Fifth Third Center
                                            201 N. Tryon St.
                                            Suite 3000
                                            Charlotte, NC 28202
                                            (704) 343-2000 / (704)343-2300 (Fax)
                                            *Admitted pro hac vice*

                                            *ATTORNEYS FOR PLAINTIFFS*

## **CERTIFICATE OF CONFERENCE**

Defendants have not yet appeared in this matter.  I will confer with counsel for Defendants once Defendants appear and will provide the Court with an updated certificate of conference.

*/s/ Thomas M. Farrell*
Thomas M. Farrell