# EXHIBIT B

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ECOMMERCE MARKETERS ALLIANCE, INC. DBA ECOMMERCE INNOVATION ALLIANCE; FLUX FOOTWEAR, LLC; and STODGE, INC. DBA POSTSCRIPT, <br><br>*Plaintiffs*, <br><br>vs. <br><br>STATE OF TEXAS; KEN PAXTON, in his official capacity as Attorney General of Texas; and JANE NELSON, in her official capacity as Texas Secretary of State, <br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 1:25-cv-01401-RP |

### DECLARATION OF ISAAC MERTENS

I, Isaac Mertens, declare as follows:

1. My name is Isaac Mertens. I am over 21 years of age. I am competent to make this Declaration. I have personal knowledge of all statements of fact set forth below, and all such statements are true and correct.

2. I am the founder and CEO of Flux Footwear, LLC ("Flux"). Flux has its principal place of business in Benbrook, Texas. Flux employs approximately 19 people.

3. Flux was originally founded in 2020, combining the forces of a former Reebok designer and a successful entrepreneur to develop a new brand of athletic shoes designed to help the world move better. Flux's current legal entity is registered in Texas.

4.  Flux is an ecommerce business that sells its products to consumers through its online store on a nationwide basis. Flux has operated its online store and consistently sold its products through ecommerce under the Flux name for a period of more than two years.



5.  Flux's website (https://fluxfootwear.com/) allows customers browsing the site to get 20% back on their first purchase when they sign up to receive text messages:

6.  Flux has nearly 200,000 customers that have asked to receive its text messages, including many who registered with telephone numbers having Texas area codes. Flux estimates that 9% to 11% of Flux's total SMS subscribers are residents of Texas. Flux generates significant portions of its revenue by sending text messages to new and existing subscribers who have opted in to receive SMS messages from the company.

7.  Flux is a member of Ecommerce Marketers Alliance, Inc. dba Ecommerce Innovation Alliance ("EIA"), a nonprofit trade association that works to advance the interests of ecommerce businesses.

8. Flux is also a customer of Stodge Inc. dba Postscript ("Postscript"), a leading text-message marketing platform that helps ecommerce businesses send text messages to consumers who have visited an ecommerce website and provided their consent to receive those messages.

9. As a member of EIA and a customer of Postscript, Flux has agreed to obtain consent from its end users before sending them text messages and to comply with CTIA Policies. CTIA is a national association of wireless carriers, including AT&T, T-Mobile, and Verizon, which, among other things, publishes Messaging Principles and Best Practices. CTIA Messaging Principles require businesses to obtain consumer consent before sending text messages to them.

10. Flux endeavors to comply with its agreements in this regard and has procedures in place to ensure that text messages are not sent on its behalf to consumers who have not consented to receive them. To the best of my knowledge and information, Flux is in compliance with these agreements.

11. I have reviewed Chapter 302 of the Texas Business and Commerce Code and the amendments thereto effective September 1, 2025. To date, Flux has not filed a registration statement with the Texas Secretary of State as contemplated by Section 302.02 and does not currently have a registration certificate as contemplated by Section 302.101. To my understanding, Flux was not required to have any such registration certificate prior to September 1, 2025, since Flux does not engage in making "telephone solicitations" as that term was defined before the amendments to Chapter 302 effective September 1, 2025.

12. I am personally confused and uncertain as to whether Flux is required to register with the Texas Secretary of State under Chapter 302 as amended effective September 1, 2025. I understand that the 2025 amendment may bring certain solicitations by text message within the

3

scope of Chapter 302's registration requirements, but it is unclear to me whether texts sent on Flux's behalf are covered.

13. My confusions and uncertainty arise from three separate portions of Chapter 302.

14. First, it is not clear to me whether Flux is within the scope of Section 302.058. That section says that Chapter 302 "does not apply" to a person who "(A) is soliciting business from a former or current customer and (B) has operated under the same business name for at least two years." Flux meets the second of those conditions since it has operated under the same business name since 2020. But, because the term "customer" is not defined in Chapter 302, I cannot tell whether and to what extent Flux meets the first condition. Flux only sends texts to consumers who have first visited Flux's website and who have agreed to receive recurring auto-dialed text messages of a marketing nature. Is such a person a "customer" upon its initial visit to Flux's website or does that person only qualify as a "customer" after making an initial purchase from Flux? The answer to that question is not clear, since in common usage "customer" sometimes refers to someone who has made an actual purchase and sometimes refers to someone who has merely visited a place of business without having made an actual purchase.

15. Second, it is not clear to me whether Flux qualifies for the exception set forth in Section 302.59. That section says that Chapter 302 "does not apply" to a "person who for at least two years, under the same name as that used in connection with a person's telemarketing operations, has operated a retail establishment where consumer goods are displayed and offered for sale continuously, if a majority of the person's business involves buyers obtaining services or products at the retail establishment." Flux's "telemarketing operations" are conducted under the same name as that used on Flux's website. And, for at least two years, Flux has continuously offered consumer goods for sale on its website. Moreover, a majority of Flux's business involves

buyers obtaining products at Flux's website. Thus, if Flux's website is a "retail establishment," as used in Section 302.59, it would appear that Chapter 302 would not apply to Flux. That said, the word "establishment" is not defined in the statute. And, since in common usage "establishment" could refer to either a bricks-and-mortar physical location or to a website, I cannot tell whether Flux falls within the scope of Section 302.59.

16.    Third, I am confused and uncertain on the extent to which Section 302.101 could apply, if at all, to Flux. That section requires registration by a seller before the seller can make a "telephone solicitation" to "a purchaser located in this state." Flux does not have access to real-time location data showing where a mobile phone is located at any given time. Consumers with Texas area codes may or may not live in Texas. Consumers who do live in Texas, moreover, frequently bring their mobile phones with them when they travel outside of the state. Thus, Flux has no way of knowing, when a particular text message is sent on a particular day to a particular purchaser, whether it is being sent to a purchaser "located in this state."

17.    I have reviewed the registration and disclosure requirements in Chapter 302. It would be extremely burdensome and expensive for Flux to comply with those requirements.

18.    Attached as Exhibit 1 to this Declaration is the form the Texas Secretary of State has issued for registration under Chapter 302. It is my understanding that, in addition to filing this form upon initial registration, Section 302.105 requires the filing of an addendum at the end of every quarter and the filing of a separate addendum every time there is any material change in the information submitted with the initial registration form. If applied to Flux, these requirements would be extremely burdensome and expensive, in part because the form requires detailed information about the specific products that a registrant sells, including a description of each product; a copy of all sales information and literature for each product; a copy of all written

material sent to purchasers; the name, address, and telephone number, by product, of each of the registrant's suppliers; the address of each location where products are kept before they are delivered to purchasers; the name and owner of each location where products are kept before delivery to purchasers; copies of contracts that allow the registrant to call on suppliers to fill orders; the name and principal residence of each salesperson who solicits on the registrant's behalf; and the name and address of each of the registrant's banks or financial institutions.

19. Currently, Flux sells over 70 products on its website that it sources from approximately 3 suppliers. Accordingly, initial registration under Chapter 302 by Flux would be a massive undertaking that I estimate would take approximately 200 person-hours of work and cost $30,000. Flux, moreover, adds and deletes products, adjusts its prices, and makes changes to sales information on a fairly regular basis. As I understand the requirements of Chapter 302, each such change could trigger the obligation to file an addendum to Flux's registration statement. Given the frequency with which Flux makes changes to its product mix and promotional materials, Flux could well be in a position, if it is required to comply with Chapter 302, of having to file addenda to its registration statements as often as every month.

20. I have also reviewed Section 302.202, which requires certain disclosures to purchasers before consummation of any sales transaction. Since text messages are limited to 160 characters, those disclosures could not be made as part of the text messages that Flux currently sends to those who have asked to receive texts from Flux. To comply with Section 302.202, Flux estimates that it would take one to two additional text messages to set forth the required disclosures, resulting in receipt of three separate texts by a recipient who had previously consented to and expected to receive just one. Having to send these additional texts would likely

6

in the aggregate increase the annual cost of Flux's SMS marketing campaign by more than $100,000.

21. On behalf of Flux, I have a concrete and immediate fear that, if we continue with our existing business without complying with Chapter 302's registration and disclosure requirements, Flux could be subject to crippling and business-ending fines and liability.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 5, 2025.

Signed by: Isaac Mertens
2F90DEB5DF8645E...
Isaac Mertens