## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| ECOMMERCE MARKETERS ALLIANCE, INC. dba ECOMMERCE INNOVATION ALLIANCE, *ET AL.*,<br><br>      *PLAINTIFFS,*<br><br>V.<br><br>STATE OF TEXAS, *ET AL.*,<br><br>      *DEFENDANTS.* | CASE NO. 1:25-CV-01401-RP |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

  The State of Texas, Jane Nelson, in her official capacity as Texas Secretary of State, and Ken Paxton, in his official capacity as Attorney General of Texas (collectively "State Defendants") file this Response in Opposition to Plaintiffs' Motion for Preliminary Injunction.

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................II

INDEX OF AUTHORITIES ...................................................................................................III

INTRODUCTION ................................................................................................................. 1

PROCEDURAL HISTORY ..................................................................................................... 1

BACKGROUND .................................................................................................................. 1

    I.    S.B. 140 .............................................................................................................. 1

LEGAL STANDARD ............................................................................................................ 2

ARGUMENT ...................................................................................................................... 3

    I.    Plaintiffs are unlikely to succeed on the merits. ........................................... 3

        A. Sovereign Immunity Bars Plaintiffs' Claims and No Exception Applies .............. 4

            1.    The *Ex parte Young* Exception to Sovereign Immunity Is Inapplicable Here.. 5

            a. The Secretary of State and the Attorney General Do Not Have a "Particular Duty" to Enforce S.B. 140 ...................................................................................... 5

            b. The Secretary of State and Attorney General Have Never "Demonstrated Willingness to Enforce" S.B. 140 Against Plaintiffs ............................................. 7

            c. The Secretary of State and Attorney General Have Never "Compelled or Constrained" Plaintiffs to Comply with S.B. 140 ............................................. 8

            2.    Plaintiffs lack standing to challenge S.B. 140 .......................................... 8

            a. Plaintiffs Failed to Plead or Show Injury in Fact ............................................ 9

            b. Plaintiffs have failed to show or plead a credible threat of enforcement. ....... 10

        B.    Plaintiffs Have Not Established that S.B. 140 Violates Federal Law or that it Proscribes Their Conduct ........................................................................................11

            1.    The ordinary meaning of "a call," as it is used in S.B. 140, is a "telephone call." 13

            2.    A contextual reading of S.B. 140 further evinces that under the statute, "a call" means "a telephone call." ................................................................................. 15

            3.    Plaintiffs' construction of S.B. 140 renders the immediately preceding subsection (§ 302.001(6-a)) insignificant and contradictory. ............................................. 16

        II.    Plaintiffs Have Failed to Establish Irreparable Injury ........................................... 17

        A. If the Court finds subject matter jurisdiction of this suit it should abstain from issuing preliminary injunctive relief. ...................................................................... 18

        III.    The Equities and the Public Interest Foreclose Injunctive Relief. .................... 19

CONCLUSION .................................................................................................................. 19

### INDEX OF AUTHORITIES

**Cases**

*Almendarez-Torres v. United States,*
    523 U.S. 224 (1998) ............................................................................................. 15

*Ardestani v. INS,*
    502 U.S. 129 (1991) ............................................................................................. 13

*Asadi v. G.E. Energy (USA), L.L.C.,*
    720 F. 3d 620 n.8 (5th Cir. 2013) ...................................................................... 15

*Babbitt v. UFW Nat'l Union,*
    442 U.S. 289 (1979) ..................................................................................... 11, 17

*BankDirect Cap. Fin., LLC v. Plasma Fab, LLC,*
    519 S.W.3d 76 (Tex. 2017) ................................................................................. 11

*Barber v. Bryant,*
    860 F.3d 345 (5th Cir. 2017) ............................................................................... 8

*Biden v. Texas,*
    597 U.S. 785 (2022) ............................................................................................. 6

*Brady v. Brooks*
    99 Tex. 366, 89 S.W. 1052, 1057 (Tex. 1905) .................................................... 7

*Brown v. City of Houston,*
    600 S.W.3d 749 (Tex. 2023) ............................................................................. 15

*Camacho v. Ford Motor,*
    993 F.3d 308 (5th Cir. 2021) ....................................................................... 11, 13

*Canal Auth. Of Fla. v. Callaway,*
    489 F.2d 567 (5th Cir. 1974) ............................................................................... 3

*Cephus v. Texas Health & Hum. Servs. Comm'n,*
    146 F. Supp. 3d 818 (S.D. Tex. 2015) ................................................................ 4

*City of Austin v. Paxton,*
    943 F.3d 993 (5th Cir. 2019) ...................................................................... 4, 5, 8

*Clapper v. Amnesty Int'l USA,*
    586 U.S. 398 (2013) ........................................................................................... 10

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................................. 9, 10, 11

*Colorado Cnty. v. Staff,*
    510 S.W.3d 435 (Tex. 2017) ............................................................................. 13

*El Paso County v. Trump,*
    982 F.3d 332 (5th Cir. 2020) ................................................................................. 8

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................................................ 5

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) .......................................................................................... 15

*Friends of Lydia Ann Channel v. U.S. Army Corps of Eng'rs,*
    701 F. App'x 352 (5th Cir. 2017) ...................................................................... 18

*Fund Texas Choice v. Deski,*
    No., 1:22CV-859-RP, 2025 U.S. Dist. LEXIS 138158 (W.D. Tex. May 23, 2025) ............ passim

*Golden v. Zwickler,*
    394 U.S. 103 (1969) .......................................................................................... 11

*Green v. Mansour,*
    474 U.S. 64 (1985) ............................................................................................. 5

*Hafer v. Melo,*
    502 U.S. 21 (1991) ............................................................................................. 4

*Health Care Serv. Corp. v. Methodist Hosp. of Dallas,*
    814 F.3d 242 (5th Cir. 2016) ............................................................................. 14

*In re Thalheim,*
    853 F.2d 383 n.7 (5th Cir. 1988) ....................................................................... 17

*Koutsostamatis,*
    956 F. 3d 301 (5th Cir. 2020) ............................................................................ 15

*Libertarian Party of Tex. v. Fainter,*
    741 F.2d 728 (5th Cir. 1984) .............................................................................. 3

*Little v. Shell Expl. & Prod. Co.,*
    690 F. 3d 282 (5th Cir. 2012) ............................................................................ 16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................... 9

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997) (per curiam) ...................................................................... 3

*McCarthy ex rel. Travis v. Hawkins,*
    381 F.3d 407 (5th Cir. 2004) .............................................................................. 5

*Mi Familia Vota v. Ogg,*
    105 F.4th 313 (5th Cir. 2024) ..................................................................... passim

*Munoz v. Intercontinental Terminals Co., L.L.C.*,
    85 F.4th 343 (5th Cir. 2023) ................................................................. 16

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2020) ................................................................. 9

*NCNB Texas Nat'l Bank v. Cowden*,
    895 F. 2d 1488 (5th Cir. 1990) .............................................................. 14

*Nichols v. Alcatel USA, Inc.*,
    532 F.3d 364 (5th Cir. 2008) ................................................................ 3

*NiGen Biotech, L.L.C. v. Paxton*,
    804 F.3d 389 (5th Cir. 2015) ................................................................ 7

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................. 19

*Opati v. Republic of Sudan*,
    590 U.S. 418 (2020) ............................................................................. 6

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock*,
    542 F. Supp. 3d 465 (N.D. TX. 2021) .................................................. 18

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020) ................................................................ 19

*Rozelle v. Lowe*,
    No. 5:15-cv-108-RP, 2015 WL 13236273 (W.D. Tex. June 1, 2015) ...................... 17

*SEIU, Local 5 v. City of Houston*,
    595 F.3d 588 (5th Cir. 2010) ................................................................ 9

*Starr v. Cnty. of El Paso*,
    No. EP-09-CV-353, 2010 WL 3122797 (W.D. Tex. Aug. 5, 2010) .................. 6, 8

*State v. Lueck*,
    290 S.W.3d 876 (Tex. 2009) ................................................................ 4

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ................................................................ 8

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................. 10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................. 10, 17

*Tex. All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ................................................................ 5, 6, 8

*Tex. Brine Co., L.L.C. v Am. Arbitration Ass'n,*
    955 F. 3d 482 (5th Cir. 2020) ............................................................................ 16

*Tex. Parks & Wildlife Dep't v. Sawyer Trust,*
    354 S.W.3d 384 (Tex. 2011) ................................................................................ 4

*Tex. v. Ysleta del Sur Pueblo,*
    No., 3:17-cv-179-PRM 2018 WL 7288032 ............................................................. 4

*Texas Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ........................................................................... 5, 7

*Thomas v. Reeves,*
    961 F. 3d 800 (5th Cir. 2020) ....................................................................... 13, 14

*Trainmen v. Baltimore & Ohio R. Co.,*
    331 U.S. 519 (1947) ......................................................................................... 15

*United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.,*
    517 U.S. 544 (1996) ........................................................................................... 9

*United Home Rental, Inc. v. Tex. Real Estate Co.,*
    716 F.2d 324 (5th Cir. 1983) ............................................................................. 18

*United States v. Abbott,*
    85 F.4th 328 n.2 (5th Cir. 2023) .......................................................................... 4

*United States v. Fisher,*
    6 U.S. (2 Cranch) 358 (1805) ............................................................................ 15

*United States v. Koutsostamatis,*
    956 F. 3d 301 (5th Cir. 2020) ....................................................................... 11, 13

*United States v. Lauderdale Cnty.,*
    914 F. 3d 960 (5th Cir. 2019) ............................................................................ 11

*United States v. Norris,*
    159 F. 3d 926 (5th Cir. 1998) ............................................................................ 15

*Vote.Org v. Callanen,*
    39 F.4th 297 (5th Cir. 2022) .............................................................................. 19

*Waak v. Rodriguez,*
    603 S.W. 3d 103 n.1 (Tex. 2020) ....................................................................... 14

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ......................................................................................... 19

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ......................................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...............................................................................................3, 19

*Wisconsin Cent. Ltd. v. United States*,
  585 U.S. 274 (2018) ................................................................................. 13

*Younger v. Harris*,
  401 U.S. 37 (1971) ..........................................................................................11

**Constitutional Provisions & Statutes**

Tex. Bus. & Com. Code § 302.001(7) ............................................................ 12

Tex. Bus. & Comm. Code § 302.001(6-a) .................................................. 1, 2

Tex. Bus. & Comm. Code § 302.001(7) ........................................................2

Tex. Bus. & Comm. Code § 304.002 .......................................................... 1

Tex. Gov't Code § 402.028 ............................................................................7

## INTRODUCTION

On September 5, 2025, Plaintiffs filed a motion for preliminary injunction arguing that S.B. 140 violates federal law. ECF No. 13. Plaintiffs claim that State Defendants have violated the First Amendment to the United States Constitution. ECF No. 13 at 10-18. The Court should deny the motion for a preliminary injunction for the reasons explained below.

## PROCEDURAL HISTORY

On September 1, 2025, Plaintiffs Ecommerce Marketers Alliance, Inc., d/b/a Ecommerce Innovation Alliance, Flux Footwear, LLC, and Stodge, Inc., d/b/a Postscript challenged S.B. 140 by filing suit in this Court against the State of Texas, Jane Nelson, in her official capacity as Texas Secretary of State, and Ken Paxton, in his official capacity as Attorney General of Texas. ECF No. 1. On September 5, 2025, Plaintiffs filed a motion seeking preliminary injunctive relief to enjoin Defendants from enforcing S.B. 140 against Plaintiffs. ECF No. 13.

## BACKGROUND

### I.    S.B. 140

The 89th Texas Legislature enacted Senate Bill 140 ("S.B. 140") to protect Texans against deceptive trade practices. Specifically, the legislature enacted S.B. 140 to prevent telemarketers from spamming Texans with unwanted text messages they have not consented to receive. S.B. 140 accomplished that goal by amending Chapters 302 and 304 of the Texas Business & Commerce Code to require telemarketers who send text messages soliciting business to Texans to register with the Secretary of State, among other requirements. Telemarketers who fail to comply with the registration requirements can be penalized for engaging in deceptive trade practices.

S.B. 140 amended Chapter 302 of the Code to give "telephone call" "the meaning assigned by Section 304.002." Tex. Bus. & Comm. Code § 302.001(6-a). Chapter 304 of the code defines the term "telephone call" to exclude "a transmission made to a mobile telephone number as part of an ad-based telephone service, in connection with which the telephone service customer has agreed with the service provider to receive the transmission." *Id*. § 304.002.

1

S.B. 140 also amended Chapter 302 to define "telephone solicitation" to mean a "call or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. The term includes a telephone call a purchaser makes in response to a solicitation sent by mail or made by any other means." *Id.* § 302.001(7).

The Business and Government Filings Division of the Office of the Texas Secretary of State administers the telephone solicitation registration program described in Chapter 302 of the Code. Ex. 1, Powell Decl. ¶ 3. Employees of that office accept telephone solicitation registration statements, and maintain registration certificates and related information as required by Texas law. *Id.* They also generally assist and provide requested information to registrants and the public. *Id.* The Texas Secretary of State does not have authority to investigate violations of S.B. 140, other provisions of Chapter 302 of the Code, or otherwise enforce the requirements of the telephone solicitation law. *Id.* ¶ 4. The office has not taken, and does not anticipate taking, any actions to enforce the provisions of S.B. 140. *Id.*

The Office of the Attorney General of Texas has discretionary authority to enforce the telephone solicitation registration program described in S.B. 140 and Chapter 302 of the Code. Ex. 2, Garcia Decl. ¶ 6. The Attorney General has discretionary authority to bring an action to enjoin a person from violating Chapter 302, and has discretionary authority to bring an action to recover a civil penalty for violating an injunction issued under Section 302.301. *Id.* ¶ 6. Furthermore, the Attorney General understands "call" in the definition of "telephone solicitation" to include a "telephone call" as defined by Sections 301.001(6-a) and 304.002 of the Code. *Id.* ¶ 5.

### LEGAL STANDARD

Parties seeking a preliminary injunction must fulfill four requirements. They must show a substantial likelihood that they will prevail on the merits, a substantial threat that they will suffer irreparable injury if the injunction is not granted, that their threatened injury outweighs the threatened harm the injunction may do to defendants, and that granting the preliminary injunction

will not disserve the public interest. *Libertarian Party of Tex. v. Fainter*, 741 F.2d 728, 729 (5th Cir. 1984). "The burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff." *Canal Auth. Of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). Plaintiffs' bear a heavy burden, as "a clear showing" is required. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

"A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (quotation omitted). A preliminary injunction is "never awarded as of right" and is instead left to a district court's "sound discretion." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

## ARGUMENT

The Court should deny Plaintiffs' motion for preliminary injunction because Plaintiffs do not meet any of the requirements necessary for the Court to award preliminary injunctive relief. Plaintiffs have failed to establish a likelihood of success on the merits because their claims are barred by sovereign immunity, they lack standing to assert their claims, and they have failed to establish that Defendants have violated federal law. They also have failed to demonstrate irreparable injury and have not shown that the balance of the equities of the public interest favor the issuance of a preliminary injunction.

## I.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.

This Court lacks subject matter jurisdiction because sovereign immunity bars Plaintiffs' claims. Additionally, Plaintiffs fail to demonstrate the elements of Article III standing. They also fail to support their arguments regarding the interpretation of S.B. 140.

### A. Sovereign Immunity Bars Plaintiffs' Claims and No Exception Applies

Sovereign immunity bars Plaintiffs' claims against all Defendants. Plaintiffs sued the State of Texas, and two state officials in their official capacities. "In Texas the State and its agencies are immune from suit and liability unless the Legislature expressly waives sovereign immunity." *Cephus v. Texas Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 827 (S.D. Tex. 2015) (citing *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011)). "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). And as a matter of federal law, "Eleventh Amendment sovereign immunity bars private suits against . . . states in federal court" absent waiver or congressional abrogation. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

The State of Texas has not voluntarily waived its sovereign immunity with respect to any of Plaintiffs' claims. And the Declaratory Judgment Act does not waive the State's sovereign immunity, either. *Tex. v. Ysleta del Sur Pueblo*, No. 3:17-cv-179-PRM 2018 WL 7288032, at *29 (W.D. Tex. Aug. 27, 2018). Section 1983 "obviously does not abrogate . . . [sovereign] immunity." *United States v. Abbott*, 85 F.4th 328, 333 n.2 (5th Cir. 2023). Plaintiffs have not alleged a statutory waiver of sovereign immunity for any of their claims, and have not cited to *Ex parte Young*.

Thus, Plaintiffs' Section 1983 claims and requests for equitable and declaratory relief against the Defendants are, as a threshold matter, foreclosed unless the narrow *Ex parte Young* exception applies. *City of Austin*, 943 F.3d at 997-998; *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024). But that exception does not apply here.

4

### 1.  The *Ex parte Young* Exception to Sovereign Immunity Is Inapplicable Here

"[T]he principle of state-sovereign immunity generally precludes actions against state officers in their official capacities, subject to an established exception: the *Ex parte Young* doctrine." *McCarthy ex rel. Travis v. Hawkins,* 381 F.3d 407, 412 (5th Cir. 2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)). That exception does not apply to any of the Defendants in this suit.

First, equitable relief is not available against the State of Texas because an action under *Ex parte Young* may not be brought against the State itself. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (*Ex parte Young* rests on the theory that suit is "not one against the State").

Second, the *Ex parte Young* exception applies only where "the state official, 'by virtue of his office'" has "'some connection with the enforcement of the [challenged] act.'" *Id.* at 997 (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). Otherwise, the plaintiff has "ma[de] [the official] a party as a representative of the state, and thereby attempt[ed] to make the state a party.'" *Id.* (quoting *Young*, 209 U.S. 123, 157 (1908)).

To determine the applicability of the *Ex parte Young* exception, the Fifth Circuit engages in a provision-by-provision analysis which looks to three guideposts: "(1) the state official has . . . a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'; and (3) the state official, through her conduct, 'compel[s] or constrain[s persons] to obey the challenged law.'" *Mi Familia Vota*, 105 F.4th at 325 (quoting *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)); *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020). None of those guideposts is satisfied based on the facts alleged in Plaintiffs' pleadings.

### a. The Secretary of State and the Attorney General Do Not Have a "Particular Duty" to Enforce S.B. 140

First, the Secretary of State and the Attorney General do not have a "particular duty" to enforce S.B. 140. *See id.* at 326. A state official has a "particular duty to enforce" a challenged statute when he or she "*must* enforce 'th[at] particular statutory provision . . . .'" *Id.* at 327 (emphasis added) (quoting *Tex. All.*, 28 F.4th at 672). If a state official merely has "discretionary authority to act" with

respect to the statutory provision at issue, then it is axiomatic that he or she is under no "particular duty to enforce" it. *Id.*

In *Fund Texas Choice v. Deski*, No. 1:22- CV-859-RP, 2025 U.S. Dist. LEXIS 138158 (W.D. Tex. May 23, 2025) for instance, this Court found that local prosecutors were entitled to sovereign immunity from a pre-enforcement challenge against certain pre-*Roe* statutes, in part because the prosecutors possessed no "specific duty" to enforce those statutes. *Id.* at *29. In reaching its decision, the Court applied the Fifth Circuit's rationale in *Mi Familia Vota*, which clarified that state officials possessing only discretionary authority to "to enforce the law do not have the 'specific duty' required to invoke *Ex parte Young*." *Id.* (*Mi Familia Vota*, 105 F.4th at 326). The *Fund Texas Choice* plaintiffs attempted to distinguish *Mi Famila Vota* by claiming the defendant prosecutors "d[id] not have 'complete discretion' to decide whether to enforce the pre-*Roe* statutes," but the Court rejected that argument. *Id.* Because there was *no* statutory mandate requiring the defendant prosecutors to pursue cases arising under the pre-*Roe* statutes, "the ['specific duty'-] guidepost weigh[ed] in favor of sovereign immunity." *Id.* at 30.

So too here. "The law does not mandate that" the Attorney General pursue any criminal or civil proceedings against violators of S.B. 140. *See id.* at *29. Instead, Chapter 302 of the Texas Business and Commerce Code explicitly entrusts the Attorney General with discretionary authority to enforce the statute. §302.301 ("The attorney general *may* bring an action to enjoin a person from violating this chapter.") (emphasis added). The presence of the word "may" in a statute "does not just suggest discretion, it '*clearly* connotes' it." *Biden v. Texas*, 597 U.S. 785, 802 (2022) (emphasis in original) (quoting *Opati v. Republic of Sudan*, 590 U.S. 418, 428 (2020)). Plaintiffs' Complaint alleges they "all face the imminent threat of prosecution (both civilly and criminally) by the Texas Attorney General." Dkt. 1, at 2. But nothing in Chapter 302 grants the Attorney General *any* criminal prosecutorial powers with respect to telephone solicitors. And "[w]hile the Attorney General may offer assistance in certain criminal cases," it is the "county and district attorneys [who hold] . . . the authority to prosecute criminal matters." *Starr v. Cnty. of El Paso*, No. EP-09-CV-353, 2010 WL 3122797, at *5 (W.D. Tex. Aug. 5, 2010).

To the extent that the Attorney General's authority to civilly enforce S.B. 140 emanates from his "general duty to see that the laws of the state are implemented," that "general duty" is by no means sufficient for *Ex parte Young. See Tex. Democratic Party*, 978 F.3d at 181; *see Brady v. Brooks*, 99 Tex. 366, 89 S.W. 1052, 1057 (Tex. 1905) (discussing the Attorney General's power to bring suits on the State's behalf); *see also* Tex. Gov't Code § 402.028 (discussing the authority of the Attorney General).

Plaintiffs point to no evidence that Secretary Nelson has any power to bring any action to enforce S.B. 140 against Plaintiffs. Nor could they make that showing, as the statute does not confer such authority on the Secretary of State. Therefore, this Court cannot issue preliminary injunctive relief against her. Plaintiffs' failure to plead or show that the Secretary of State or Attorney General have a "specific" or "particular duty" to enforce S.B. 140 entitles them to sovereign immunity.

### b. The Secretary of State and Attorney General Have Never "Demonstrated Willingness to Enforce" S.B. 140 Against Plaintiffs

Second, the Secretary of State and Attorney General have never "demonstrated willingness to enforce" S.B. 140 against Plaintiffs as their pleadings surmise. *See Fund Tex. Choice*, 2025 U.S. Dist. LEXIS 138158, at *24. It is up to Plaintiffs to prove that the state officials they chose to sue have "taken some step to enforce the statute," *see id.* (quoting *Mi Familia Vota*, 105 F.4th at 329), against businesses "that operate consent-based text message campaigns." ECF No. 1, at 1. Yet they do not (and cannot) point to *any* "prior or contemporaneous" statements, *any* "threatening letters," or *any* "affirmative actions" whatsoever by General Paxton or Secretary Nelson to substantiate their fears of civil enforcement. *See Fund Tex. Choice*, 2025 U.S. Dist. LEXIS 138158, at *24; *compare Tex. Democratic Party*, 978 F.3d at 181 *with NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 392, 397 (5th Cir. 2015).

If anything, Plaintiffs' own sworn statements undermine their enforcement concerns. Despite their awareness of the registration and disclosure requirements under Chapter 302, none of the Plaintiffs have even attempted to register with the Secretary of State. *See* ECF No. 13-3 (Postscript Declaration); ECF No. 13-1 (EIA Declaration); ECF No. 13-2 (Flux Declaration). Yet, to date, the Attorney General has done *absolutely nothing* to penalize Plaintiffs for their refusal to register. Nor has he indicated any plans to. Neither has the Secretary of State; she has no power to penalize, or take any

enforcement action against, Defendants for their failure to register. In cases, such as this one, where the defendant officials have "not enforced or threatened to enforce the [challenged] statute against" the plaintiffs, or even "shown [an] interest in doing so," the *Ex parte Young* exception is clearly foreclosed. *Starr*, 2010 WL 3122797, at *17.

### c. The Secretary of State and Attorney General Have Never "Compelled or Constrained" Plaintiffs to Comply with S.B. 140

Third, and finally, the Secretary Nelson and Attorney General Paxton have not, "through [their] conduct, compel[led] or constrain[ed] Plaintiffs] to obey the challenged law." *Mi Familia Vota*, 105 F.4th at 326 (quoting *Tex. All. for Retired Ams.*, 28 F.4th at 672). Secretary Nelson lacks the power to compel Plaintiffs to obey S.B. 140. "[T]he mere fact that the [Attorney General] has the authority to enforce [S.B. 140] cannot be said to 'constrain' [Plaintiffs]" from exercising their First Amendment rights. *See City of Austin*, 943 F.3d at 1001. Again, they do not even attempt to plead or show that the Attorney General has brought, or is likely to, "'bring a proceeding'" against them based on S.B. 140. *See id*. Plaintiffs, to be sure, aver that "Chapter 302 of the Texas Business & Commercial Code, as amended by S.B. 140, *will* chill [their] protected speech." ECF No. 1, at 33 (emphasis added). Evidentially, their speech is not suffering *any* chilling effect now. But even assuming, *arguendo*, that it is, claims of a "chilling effect is not sufficient proof of constraint." *Fund Tex. Choice*, 2025 U.S. Dist. LEXIS 138158, at *38.

### 2. Plaintiffs lack standing to challenge S.B. 140.

At the preliminary injunction stage, plaintiffs must make a "clear showing" that they have standing. *Barber v. Bryant,* 860 F.3d 345, 352 (5th Cir. 2017). Specifically, Plaintiffs must show an actual or imminent, concrete and particularized "injury-in-fact," that is fairly traceable to the challenged action of the defendant and that is likely to be redressed by a favorable decision. *El Paso County v. Trump,* 982 F.3d 332, 337 (5th Cir. 2020).

Plaintiffs must establish standing as of "the time the action commences." *Stringer v. Whitley,* 942 F.3d 715, 724 (5th Cir. 2019). For prospective relief, Plaintiffs' injury "must be

certainly impending to constitute injury in fact"—"[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (quotations omitted).

Defendants incorporate by reference all of their arguments set forth in their Motion to Dismiss demonstrating Plaintiffs have failed to make a clear showing that they have suffered a legally cognizable injury in fact or that their purported injuries are traceable to S.B. 140 or redressable by this Court. *See* ECF No. 20 at 2-4. To those arguments, Defendants add that Ecommerce Marketers Alliance ("EIA") lack associational standing because its individual members lack standing.

Plaintiff EIA lacks associational standing to bring suit on behalf of its members. *See* ECF No. 1, at 4 (asserting associational standing). "An association has standing to bring claims on behalf of its members when (1) individual members would have standing, (2) the association seeks to vindicate interests germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the individual members' participation." S*tudents for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4h 1078, 1084 (5th Cir. 2022). Here, EIA's claims fail right out of the gate because its individual members do not have standing.[1]

While it might be true that "standing rules are [more] relaxed for First Amendment cases[,]" *see Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 724 (5th Cir. 2020), "the elements of injury, causation, and redressability are [still] an 'irreducible constitutional minimum'" no less required in the First Amendment context than in other contexts. *SEIU, Local 5 v. City of Houston*, 595 F.3d 588, 597 (5th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs' failure to allege the essential elements of standing and irreparable harm mean the Court lacks subject matter jurisdiction over any of their claims.

### a. Plaintiffs Failed to Plead or Show Injury in Fact

---

[1] Defendants do not dispute that EIA, through its presence in this action, aims to protect interests "germane to its" mission to "help[] ecommerce companies navigate the ever-evolving landscape of telemarketing laws and regulations at both the federal and state levels." ECF No. 1, at 4. They also acknowledge this suit as one not requiring individual members' participation because EIA requests prospective injunctive relief. *See United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 554 (1996).

EIA identifies Plaintiffs Postscript and Flux as its members. ECF No. 1, at 6; Mertens Decl. ¶ 9. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (explaining that an organization suing on its members' behalf must "identify members who have suffered the requisite harm"). But neither Postscript nor Flux allege an injury in fact.

An injury cannot be "too speculative for Article III purposes . . . " *Clapper v. Amnesty Int'l USA*, 586 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Rather, it must be "*certainly impending*." *Id*. That simply means "'[a]llegations of [hypothetical] future injury' are not sufficient." *Id*. (quoting *Whitmore,* 495 U.S. at 158).

To be sure, claims of "future injury may suffice if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Clapper*, 568 U.S. at 414 n.5). Accordingly, plaintiffs bringing a pre-enforcement claim must allege both (1) an intention to engage in conduct arguably protected by the Constitution, "but proscribed by [the challenged] statute," and (2) a "credible threat of enforcement." *Id*. at 159. Plaintiffs' claims fail on both fronts.

### b. Plaintiffs have failed to show or plead a credible threat of enforcement.

Furthermore, Plaintiffs' claims fail to satisfy the second prong of *Susan B. Anthony List*'s injury-in-fact inquiry. *See id*. at 164. No amount of searching through their pleadings will reveal a credible threat of enforcement because there is none. As the State has shown, Plaintiffs cannot remotely show that the Attorney General, at any point, warned them to comply with Chapter 302's regulations. Nor can they allege he ever threatened them with legal action or civil penalties. Furthermore, they identify no prior or contemporaneous instances in which the Attorney General took enforcement action against businesses like Plaintiffs.

Defendants have not taken or threatened to take enforcement action against Plaintiffs. In their view, S.B. 140 does not obstruct the regulatory exemption Plaintiffs receive under Chapter 304's narrow definition of a "telephone call." *See* Ex. 2, Garcia Decl. ¶ 5. At the end of the day,

"any threat of future prosecution is 'wholly conjectural.'" *Id.* (quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969)).

When, as in this case, petitioners cannot "'claim that they have ever been threatened with prosecution, [or] that a prosecution is likely,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt*, 442 U.S. at 298 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). Therefore, this case is nonjusticiable and must be dismissed.

### B.  Plaintiffs Have Not Established that S.B. 140 Violates Federal Law or that it Proscribes Their Conduct

For starters, S.B. 140 does not arguably proscribe Plaintiffs' conduct. Plaintiffs' untenable interpretation of S.B. 140 "strips [the statute] of its context." *United States v. Koutsostamatis*, 956 F. 3d 301, 306 (5th Cir. 2020).

In Defendants' view, a plain reading of the statute suggests "texts sent with the consent of the recipient" (*see* ECF No. 1, at 13) are not among the communications captured by Chapter 302's updated definition of "telephone solicitation."

"When interpreting a Texas statute," courts in this circuit "use the same methods of statutory interpretation used by the Texas Supreme Court." *Camacho v. Ford Motor*, 993 F.3d 308, 311 (5th Cir. 2021). To sum up that Court's view: "Text is the alpha and the omega of the interpretive process." *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017).

Because this is a statutory interpretation case, the journey should "begin[], and, if possible, end[] with the language" of S.B. 140. *See United States v. Lauderdale Cnty.*, 914 F. 3d 960, 963 (5th Cir. 2019). Chapter 302 of the Texas Business & Commerce Code, as amended by S.B. 140, defines "telephone solicitation" as:

> A ***call*** or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. The term includes a telephone call a purchaser makes in response to a solicitation sent by mail or made by other means.

S.B. 140, 89th Leg., Reg. Sess. (Tex. 2025) (emphasis added). However, before September 1, 2025, Chapter 302 characterized a "telephone solicitation" as:

> *A **telephone call*** or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. The term includes a telephone call a purchaser makes in response to a solicitation sent by mail or made by other means.

Tex. Bus. & Com. Code § 302.001(7) (emphasis added). That information is relevant because the Texas Legislature, during the 89th Regular Session removed the word "telephone" from the first line of § 302.001(7). Also pertinent here is Chapter 304. It defines a "telephone call" as "a call or other transmission, including a transmission of a text . . . to a mobile telephone number serviced by a provider of commercial mobile service," and it expressly clarifies, in relevant part, that "the term *does not include* a transmission made to a mobile telephone number as part of an ad-based telephone service, in . . . which the telephone service customer has *agreed* . . . to receive the transmission." § 304.002(10)(C) (emphasis added).

Of course, because Plaintiffs operate "text-messaging campaigns" reaching only consumers who have *consented* to receive those text messages, their services are specifically exempted from regulations reaching "telephone calls" as Chapter 304 defines the phrase. ECF No. 1 at 1, 13-14. The presence of the phrase "telephone call" in the version of Chapter 302 predating S.B. 140, they argue, ensured their opt-in marketing campaigns fell outside the scope of the registration, reporting, and disclosure regulations applicable to persons engaged in "telephone solicitation." ECF No. 13, at 6-9. But because S.B. 140 excludes the "telephone" modifier that once preceding the word "call," Plaintiffs fear they are now subject Chapter 302's regulatory scheme. *See generally* ECF No. 1; Mertens Decl. ¶ 16; Beller Decl. ¶¶ 13, 14.

Boiled down, this case turns on whether the word "call," as it appears in S.B. 140, means a "telephone call" as defined by Chapter 304. If the answer is yes—as the State argues—then Plaintiffs' conduct is not even reached by S.B. 140, and their allegations of injury are hamstrung. Crucially, there are at least three reasons why Plaintiffs' business model clearly does not fall within the ambit of S.B. 140.

**1. The ordinary meaning of "a call," as it is used in S.B. 140, is a "telephone call."**

When courts encounter undefined statutory language, they must look to the term's "'ordinary meaning . . . at the time [the legislature] enacted the statute." *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018); *Camacho v. Ford Moto Co.*, 993 F.3d 308, 312 (5th Cir. 2021) (explaining a "undefined statutory term" should be interpreted according to its " 'common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result'"(quoting *Colorado Cnty. v. Staff*, 510 S.W.3d 435, 448 (Tex. 2017))). To decipher ordinary meaning, courts often consult "'dictionary definitions, judicial constructions of the term, and other statutory definitions.'" *Id.* (quoting *Colorado Cnty.*, 510 S.W. at 448).

Here, we start with the ordinary meaning of the word "call." The word bears many different meanings in common parlance. When used a noun, a "call" could be "a request or command to come or assemble," or perhaps "a divine vocation . . . to a particular course of action," or even a "justification." *Call, Merriam-Webster Dictionary* (online ed., 2025). Thus an army sergeant may *call* his troops to attention. A young man or woman may sense an inward *call* to enter the ministry. And challenging times may *call* for courage. But the term "call" also means "the act of speaking to or attempting to reach someone by telephone . . . ." *Id.; Call, The American Heritage Dictionary of the English Language* (5th ed. 2022)) (defining "call," in relevant part, as "a telephone communication or connection"). Clearly, "[o]ne of these things is not like the others." *Koutsostamatis*, 956 F. 3d at 306.

When "a word [] has many dictionary definitions," we "must draw its meaning from its context." *Ardestani v. INS*, 502 U.S. 129, 135 (1991). So, when a former colleague hands over his business card and says, "please feel free to give me a call," one may reasonably understand that to mean *a telephone call*. If a mother disciplines her son because of a call from his middle school principal, we gather she received some unpleasant revelations during her telephone call with an administrator. Fundamentally, statutory interpretation does not require courts to abandon commonsense notions about "how people typically speak and write." *Thomas v. Reeves*, 961 F. 3d 800, 803 (5th Cir. 2020) (per curiam).

If understood according to its ordinary, everyday meaning, the phrase "a call," as it appears in S.B. 140, means "a telephone call." And given its presence in a subsection defining "telephone solicitation," that makes sense. What other kind of call could it be referring to? "[N]o reader would understand" that phrase to mean a computer call or some type of verbal command. *See Thomas*, 961 F. 3d at 804. Plaintiffs' strained reading of S.B. 140 neglects ordinary meaning and demands "special, lawyers-only grammar rules" to make any sense of. *See id.* at 805. Yet "the [very] notion that there are special, lawyers-only grammar rules for reading statutes is at odds with the principle that, in a democracy, laws should be easily understood by the people they govern." *Id.* at 805. Here, the ordinary, everyday meaning of "a call," must rule the day. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (2012) [hereinafter "Reading Law"] ("The ordinary meaning rule is the most fundamental rule of interpretation.").

To be sure, Plaintiffs may oppose the State's reading of S.B. 140 by suggesting it renders the Legislature's exclusion of the word "telephone" from that part of the statute effectively meaningless. But "[o]nly if ambiguity exist[s] in the current text of the [statute] should we consider looking at what prior version of it said." *Waak v. Rodriguez*, 603 S.W. 3d 103, 113 n.1 (Tex. 2020) (Blacklock, J., dissenting). There is no ambiguity as to whether "a call" means "a telephone call" under S.B. 140. By dictionary definition, it does. Therefore, "[a]ll that matters here is what the latest version of the statute means in plain English." *Id.*

Even if there were a question of ambiguity, "[c]hanges in statutory language need not ipso facto constitute a change in meaning or effect." *NCNB Texas Nat'l Bank v. Cowden*, 895 F. 2d 1488, 1500 (5th Cir. 1990). Nothing about the absence of the word "telephone" from the first line of § 302.001(7) places "telephone calls" beyond the statute's reach *or* obstructs Plaintiffs' exemption from the reporting, disclosure, and reporting requirements imposed under Chapter 302.

Summarily, because the ordinary meaning of "a call" is "a telephone call," the Court need not opine on any additional canons of construction. *See Health Care Serv. Corp. v. Methodist Hosp. of Dallas*, 814 F.3d 242, 248 (5th Cir. 2016). Its inquiry ends. *Id.* The State will show, nonetheless, that other

"tried-and-true tools" statutory interpretation favor its forthright reading of S.B. 140. *See Koutsostamatis*, 956 F. 3d. at 306.

### 2. A contextual reading of S.B. 140 further evinces that under the statute, "a call" means "a telephone call."

Courts have long instructed that "the words of a statute must be read in context and with a view to their place in the overall statutory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *United States v. Fisher*, 6 U.S. (2 Cranch) 358, 386 (1805) (Marshall, C.J.) ("[I]n the exposition of statutes, . . . every part is to be considered, and the intention of the legislature to be extracted from the whole."). Yet Plaintiffs ignore that warning. Instead, they construe S.B. 140 in a vacuum.

Notably, "'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947)). That is, so long as they do not contravene "the plain meaning of the underlying text." *Brown v. City of Houston*, 600 S.W.3d 749, 754 (Tex. 2023); *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F. 3d 620, 626 n.8 (5th Cir. 2013) (same).

S.B. 140, which amends Chapter 302 of the Business and Commerce Code, is in Title 10 of the Code, entitled "Use of Telecommunications." § 302.000. Title 10's subtitle is entitled "Telephones." *Id.* And Chapter 302 is entitled "Regulation of Telephone Solicitation." *Id.* These titles and headings "leave[] no doubt whatsoever" that the drafters of S.B. 140 were concerned about communications that happen vis-à-vis telephones. *See United States v. Norris*, 159 F. 3d 926, 931 (5th Cir. 1998). And they are certainly not in tension with S.B. 140's plain meaning. S.B. 140's use of the term "a call" refers to "a telephone call" in a part of the Code that is heavily focused on telephones.

But that is not all. Section 302.003 of the Code mandates that the language in Chapter 302 "be liberally construed and applied to promote its underlying purpose to protect persons . . . against *false, misleading, or deceptive* practices in telephone solicitation business." §302.003

(emphasis added). The Texas Legislature has not hidden the ball here. Chapter 302 exists to curb the dishonest antics sometimes employed by entities using telephone-based communications in their efforts to sell people stuff.

Plaintiffs allege, and the State does not dispute, that their business model involves sending text messages to consumers who want, and have consented to, receiving such messages. ECF No. 1, at 1,2; ECF No. 13, at 13,19. That is not a "deceptive practice." *See* §302.003. All told, Plaintiffs' interpretation is not merely at odds with the stated purpose of Chapter 302—it teeters on absurdity. *Munoz v. Intercontinental Terminals Co., L.L.C.*, 85 F.4th 343, 352 (5th Cir. 2023) ("'Absurdity requires more than questionable policy.' It requires a result that 'no reasonable person could intend.'" (first quoting *Little v. Shell Expl. & Prod. Co.,* 690 F. 3d 282, 291 (5th Cir. 2012); and then quoting *Tex. Brine Co., L.L.C. v Am. Arbitration Ass'n*, 955 F. 3d 482, 486 (5th Cir. 2020))); *see* ECF No. 1, at 28 (explaining that it is "technically impossible for a business who has received the telephone number from an individual consenting to receive text messages" to comply with some of the regulations imposed under Chapter 302).

### 3. Plaintiffs' construction of S.B. 140 renders the immediately preceding subsection (§ 302.001(6-a)) insignificant and contradictory.

Plaintiffs rightly observe that if S.B. 140's use of the term "a call" does not mean "a telephone call," then S.B. 140's "incorporation of Chapter 304's definition, including its exemption from consent-based text messaging programs," is "essentially meaningless." ECF No. 1, at 9. That is, again, because Chapter 304's definition of "telephone call"—by expressly exempting from regulation "ad-based telephone service[s]" in which "the . . . customer has agreed to receive the transmission"— circumscribes the term "telephone solicitation" to entities that contact consumers via text or call without first receiving customer consent. *See* § 304.002(10)(C); ECF No. 13, at 6-7.

So in Plaintiffs' view, S.B. 140 exposes them to the regulatory regime from which the immediately preceding subsection (§ 302.001(6-a)) purports to shield them. But that is error. Specifically, it cuts against the bedrock principle that "a statute should be construed so that each

of its provisions is given its full effect." *In re Thalheim*, 853 F.2d 383, 388 n.7 (5th Cir. 1988). As the Fifth Circuit has warned, "[i]nterpretations that render parts of a statute inoperative . . . are to be avoided." *Id.*

Contrary to Plaintiffs' pleadings, Chapter 302's definitions of "telephone call" and "telephone solicitation" are not irreconcilable. Indeed, the State's text-centric construction of S.B. 140 evinces that § 302.001(6-a) (discussing the definition of "telephone call") and § 302.001(7) (discussing the definition of "telephone solicitation") can, and should, be read in harmony with one another. *See* READING LAW at 180 ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory.").

For all the above-discussed reasons, Plaintiffs' pre-enforcement challenge fails to show they intend to engage in conduct arguably protected by the Constitution, "but proscribed by [S.B. 140]." *Susan B. Anthony List*, 571 U.S. at 158. After all, the statute does not even "sweep[] broadly [enough] . . . [to] cover the subject matter of petitioners' intended speech." *Cf. id.* at 162 (finding plaintiffs' "intended future conduct" "'arguably . . . proscribed'" by a statute that would have had a cognizable impact on their speech (quoting *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979))).

## II.    PLAINTIFFS HAVE FAILED TO ESTABLISH IRREPARABLE INJURY.

Plaintiffs cannot show the irreparable injury necessary for preliminary injunctive relief for the same reasons they have failed to establish Article III injury. "[A] movant must affirmatively demonstrate a substantial likelihood that, in the absence of the extraordinary remedy it seeks, it will suffer injury that is both certain and great, actual and not theoretical." *Rozelle v. Lowe*, No. 5:15-cv-108-RP, 2015 WL 13236273, at *1 (W.D. Tex. June 1, 2015) (Pitman, J.) (citation omitted). The alleged injury here is anything but "certain and great"—to the contrary, it is entirely speculative. And the alleged injury could not be redressed by the remedy Plaintiffs seek even if it were not speculative.

The injury Plaintiffs allege undermines any assertion of irreparable harm. "Speculation built upon further speculation does not amount to a reasonably certain threat of imminent harm," and therefore it does not warrant injunctive relief. *Friends of Lydia Ann Channel v. U.S. Army Corps of Eng'rs*, 701 F. App'x 352, 357 (5th Cir. 2017) (cleaned up). Yet Plaintiffs speculate that S.B. 140 will be interpreted in a way that Defendants will enforce it against them. *See generally* ECF Nos. 1, 13. But interpreting S.B. 140 in accordance with established canons of construction shows it does not run afoul of the First Amendment.

### A. If the Court finds subject matter jurisdiction of this suit it should abstain from issuing preliminary injunctive relief.

Even if the Court finds proper subject matter jurisdiction over this suit, it should abstain from issuing a preliminary injunction. "The facts of this case fall squarely within the well-defined ambit of *Pullman* abstention." *United Home Rental, Inc. v. Tex. Real Estate Co.*, 716 F.2d 324, 332 (5th Cir. 1983). Both parties here agree that this litigation hinges entirely upon the unsettled question of whether the term "a call," as it is used in S.B. 140 refers to "a telephone call," as it is defined under Chapter 304. ECF No. 1, at 8-9. Plaintiffs say it is "currently unclear whether" S.B. 140 expands the scope of Chapter 302 to subject them to regulations they were previously exempted from. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock*, 542 F. Supp. 3d 465, 471 (N.D. TX. 2021); Mertens Decl. ¶ 16; Beller Decl. ¶¶ 13, 14. Meanwhile, Defendants do not understand S.B. 140 to disturb those exemptions. *See* Ex. 2, Garcia Decl. ¶ 5. To the extent that any ambiguity exists as to S.B. 140's scope and meaning, the Texas Supreme Court should have the first opportunity to construe the relevant statutory provisions.

III.    **THE EQUITIES AND THE PUBLIC INTEREST FORECLOSE INJUNCTIVE RELIEF.**

The third and fourth factors under the preliminary injunction standard, weighing the alleged harm to both parties and assessing the public interest, "merge" when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). When determining whether to issue a preliminary injunction, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Here, equity favors denying Plaintiffs' requested preliminary injunction. Defendants' interest in addressing spam text messages is palpable. That interest, and the irreparable harm if officials cannot act to protect the recipients of those unwanted messages, merges with the public's interest. *See, e.g.*, *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 243 (5th Cir. 2020). Additionally, the Fifth Circuit generally considers a State enjoined from giving effect to its statutes to automatically suffer a form of irreparable injury. *E.g.*, *Vote.Org v. Callanen*, 39 F.4th 297, 308 (5th Cir. 2022). The public interest would be disserved by enjoining the operation of a statute designed to safeguard Texans from unwanted spam text message solicitations. Defendants' interests in addressing the harms caused to Texans by unwanted spam text message solicitations outweighs the speculative harms Plaintiffs allege. The balance of equities and the public interest weigh against the Court granting preliminary injunctive relief here.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion for Preliminary Injunction.

19

Dated: September 26, 2025

Respectfully submitted.

**KEN PAXTON**
Attorney General

**RYAN G. KERCHER**
Chief, Special Litigation

**BRENT WEBSTER**
First Assistant Attorney General

**DAVID BRYANT**
Senior Special Counsel
Texas Bar No. 03281500

**RALPH MOLINA**
Deputy First Assistant Attorney General

/s/ *Munera Al-Fuhaid*
**MUNERA AL-FUHAID**
ATTORNEY IN CHARGE

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

Special Counsel
Texas Bar No. 24094501

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov
munera.al-fuhaid@oag.texas.gov

**COUNSEL FOR STATE DEFENDANTS**

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on September 26, 2025 and that all counsel of record were served by CM/ECF.

/s/ *Munera Al-Fuhaid*
**MUNERA AL-FUHAID**